**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

JENNIFER K. ROBB,                    CAUSE NO. CV 06-15-M-JCL

            Plaintiff,

     vs.

                         FINDINGS AND RECOMMENDATION
STATE FARM MUTUAL AUTOMOBILE         OF U.S. MAGISTRATE JUDGE
INSURANCE COMPANY,

            Defendant.

_____

This automobile liability insurance coverage dispute is before the Court on the parties' cross motions for summary judgment.  The principle issue determinative of the parties' cross motions is appropriately framed as follows:  Under Montana law, is an automobile liability insurer entitled to rescind an insurance binder *ab initio* for a material misrepresentation after an intervening accident in which an innocent third party is injured?  Having reviewed the motions, briefs, and evidentiary materials submitted in support thereof, the Court hereby enters the following:

**RECOMMENDATION**

1.  The Plaintiff's Motion for Partial Summary Judgment should be **GRANTED**.  The Court should declare that Defendant's binder at issue in this case provides coverage for Plaintiff's damages caused by Defendant's insured, but only to the extent of the statutorily required minimum policy limits.  The Court should also award Plaintiff her attorney fees for this declaratory judgment.

2.  The Defendant State Farm's Motion for Summary Judgment on the Issue of Insurance Coverage should be **DENIED**.  Its Motion for Partial Summary Judgment Dismissing Count Two of the Complaint should be **GRANTED**, and Count II of the Complaint should be **DISMISSED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this ___23rd___ day of October, 2006.


                              _/s/ Jeremiah C. Lynch_____
                              Jeremiah C. Lynch
                              United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 2

## I.  INTRODUCTION

The Plaintiff, Jennifer Robb, has brought this lawsuit seeking to recover insurance policy liability benefits from Defendant State Farm Mutual Automobile Insurance Company (State Farm) on an insurance binder it issued to Tammi Michaels (the third-party tortfeasor).  The Plaintiff alleges as follows:

Ms. Michaels sought insurance coverage from State Farm, and on August 2, 2004, she obtained from State Farm a temporary Montana liability insurance identification card.  She paid the $209.00 premium for the insurance coverage on August 2, 2004. Later that same day Ms. Michaels was involved in a motor vehicle accident wherein she rear-ended the Plaintiff's vehicle.

The Plaintiff then filed a lawsuit in state court against Ms. Michaels for the accident, and Ms. Michaels notified State Farm of the lawsuit.  State Farm declined to defend Ms. Michaels and it informed her it was denying her any insurance coverage. The Plaintiff proceeded to obtain a judgment against Ms. Michaels in the amount of $96,591.20.

For her Complaint the Plaintiff alleges five causes of action against State Farm.  In Count I she seeks a declaratory judgment to establish the existence and validity of the insurance binder, that coverage exists under the binder for Ms. Michaels' negligence, that State Farm is required to indemnify Ms. Michaels

for the full amount of the judgment against her, and that State Farm shall pay such funds directly to the Plaintiff.

In Count II the Plaintiff alleges State Farm breached the implied covenant of good faith and fair dealing thereby entitling her to both tort and punitive damages.

In Counts III and IV the Plaintiff alleges State Farm is liable for both common law and statutory "insurance bad faith". She also alleges State Farm is liable for punitive damages for its bad faith conduct.

Finally, in Count V Plaintiff alleges State Farm is liable for the full amount of the judgment against Ms. Michaels.

Plaintiff and State Farm have filed cross motions for summary judgment.  State Farm's motion requests summary judgment on Plaintiff's claims of insurance coverage (Count I), and on the alleged breach of the covenant of good faith and fair dealing (Count II).  Plaintiff similarly moves for summary judgment on the issue of insurance coverage for the accident caused by Ms. Michaels.

## II.  APPLICABLE LAW - SUMMARY JUDGMENT STANDARDS

A party moving for summary judgment bears the burden of demonstrating "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A movant may satisfy that burden where the documentary evidence produced by the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 4

parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the nonmoving party.  *Id*. at 252.

## III.  DISCUSSION

In general, the material facts as alleged in the Complaint and as set forth in Plaintiff's June 29, 2006 Statement of Undisputed Facts are not in dispute.[1]  Specifically, the parties do not dispute the following:

(1) Ms. Michaels applied for insurance through State Farm on August 2, 2004, (2) Ms. Michaels paid State Farm $209.00 as premium for the binder, (3) State Farm issued Ms. Michaels an insurance binder[2] and a temporary insurance card,[3] (4) Ms. Michaels was involved in a motor vehicle accident with the Plaintiff later that same day, (5) On August 3, 2004, State Farm received Ms. Michaels' motor vehicle history report from the State of Alaska which disclosed a driving record which precluded her from eligibility for insurance coverage,[4] and (6) Ms.

---

[1]*See* State Farm's Statement of Genuine Issues (July 31, 2006).

[2]State Farm's Statement of Undisputed Facts (SFSUF) (July 31, 2006) at ¶ 4.  The binder provided bodily injury liability limits of $50,000 per person/$100,000 per occurrence.

[3]Plaintiff's Statement of Undisputed Facts (PSUF), Ex. A.

[4]SFSUF at ¶ 6.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 5

Michaels did not disclose on the application she provided State Farm that her Alaska driver's license was suspended.

The parties dispute what communications State Farm sent to Ms. Michaels following its receipt of Ms. Michaels' driving record.  The Plaintiff contends State Farm sent Ms. Michaels a letter dated August 6, 2004, purportedly "cancelling" her insurance.  The letter states that "[a]fter a thorough review, we are sorry that we cannot continue this insurance after the date and time of cancellation shown above[]" based on two prior license revocations and a suspension.[5]  The letter advised State Farm would send Ms. Michaels a refund of her premium.  Finally, the letter notes as follows:

    DATE AND TIME OF CANCELLATION
    September 21, 2004
    12:01 AM Standard Time[6]

In contrast, State Farm has submitted an affidavit from Valeeta Hall which explains State Farm's procedure relative to its cancellation or rescission of Ms. Michaels' insurance.  Ms. Hall states that on the insurance application Ms. Michaels materially misrepresented the status of her drivers' license which was actually revoked at the time she applied for

_____

[5]PSUF, Ex. B.

[6]*Id*.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 6

insurance.[7]  Ms. Hall states the underwriter decided on August 4, 2004, to rescind the insurance policy, but on August 5, 2004, the underwriter's assistant prepared the cancellation letter dated August 6, 2004, which is attached to Plaintiff's SUF, Ex. B. Later on August 5, 2004, the underwriter's assistant then prepared a rescission letter dated August 6, 2004, which State Farm sent to Ms. Michaels.[8]  Ms. Hall testifies that State Farm did not send the August 6, 2004 cancellation letter to Ms. Michaels as stated by Plaintiff.[9]

The text of the rescission letter is different from the text of the cancellation letter.  It notes that Ms. Michaels materially misrepresented the status of her drivers' license which was in fact revoked.  Accordingly, the letter states "we are rescinding and shall treat as void from inception any and all insurance contracted for under your application."[10]  State Farm returned the full amount of the premium Ms. Michaels paid.

Clearly there is a factual dispute as to which letter State Farm actually sent to Ms. Michaels.  However, as discussed below, ultimately it makes no difference what letter was sent to Ms.

---

[7]Aff. of Valeeta Hall (July 20, 2006) at ¶ 4.

[8]Aff. of Hall at ¶¶ 8-13.

[9]*Id*. at ¶ 14.

[10]*Id*., Ex. A4.

Michaels, and the factual dispute is not material to the parties'
cross motions for summary judgment.  Even if the Court were to
assume State Farm sent Ms. Michaels the rescission letter, and
not the cancellation letter, the only substantive issue in this
case is whether, as a matter of law, State Farm had the right or
ability to rescind the insurance binder in light of Plaintiff's
damages.

### A.  Insurance Coverage

Based on the foregoing facts, the parties dispute the legal
effect of State Farm's attempted rescission with regard to the
existence of insurance coverage for the Plaintiff's injuries.
The Court agrees that the fundamental issue is whether an insurer
can void an insurance binder *ab initio* when the attempted
rescission occurred subsequent to a covered loss suffered by a
third party.

Because this action was removed from state court under
diversity jurisdiction, the Court applies the substantive
insurance law of the State of Montana, the forum state.  *Bell
Lavalin, Inc. v. Simcoe and Erie General Ins. Co.*, 61 F.3d 742,
745 (9th Cir. 1995).  The federal court is, of course, bound by
the pronouncements of the state's highest court on applicable
state law.  *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 524
(9th Cir. 1989).  However, "[w]hen a decision turns on applicable
state law and the state's highest court has not adjudicated the

issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000) (citation omitted).  In other words, the federal court must use its "best judgment to predict how that court would decide it." *Capital Development Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997) (citation omitted).  In the exercise of that judgment the federal court must look to existing state law and should rely on persuasive authorities to predict how the court might rule.  *See*, *United States v. Colin*, 314 F.3d 439, 443 (9th Cir. 2002); *Ticknor v. choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).  With these principles in mind, the Court turns to address the issues at hand.

The parties do not dispute the subject of this action involves State Farm's issuance of a temporary insurance binder, as opposed to a formal policy, as recognized and permitted by Mont. Code Ann. § 33-15-411.  The fact that this case involves a binder is not significant.  A binder and a formal policy are both treated as contracts of insurance.  *American Indemnity Co. v. Elespuru*, 302 F. Supp. 878, 880-81 (D. Mont. 1969).

Plaintiff argues the insurance binder State Farm issued is subject to state statutory insurance policy cancellation notice requirements.  Mont. Code Ann. §§ 33-23-212 et seq.  Depending on

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 9

different circumstances, a cancellation is not effective for 45

days after the date of the mailing of the cancellation notice

under Mont. Code Ann. § 33-23-212(1), or 10 days under the

circumstances described in Mont. Code Ann. § 33-15-1103 (midterm

cancellation).

　　　State Farm argues the statutory "cancellation" requirements

are not applicable to its "rescission" of the binder, and the law

permitted State Farm to rescind the binder *ab initio*.  State Farm

argues that under general contract law provisions it is entitled

to rescind a contract where its consent was induced by fraud as

defined in Mont. Code Ann. § 28-2-405.  Mont. Code Ann. § 28-2-

1711.

　　　More specific to insurance contracts, State Farm also argues

state law prohibits recovery under an insurance policy if the

insured made misrepresentations on the application for insurance.

Such law provides as follows:

>　　33-15-403.  Representations in applications -- recovery
> precluded if fraudulent or material
>
>>　　(1) All statements and descriptions in any application
>> for an insurance policy or annuity contract or in
>> negotiations for an insurance policy or annuity
>> contract by or on behalf of the insured or annuitant
>> are considered representations and not warranties.
>>
>>　　(2) Misrepresentations, omissions, concealment of
>> facts, and incorrect statements do not prevent a
>> recovery under the policy or contract unless:
>>
>>>　　(a) fraudulent;

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 10

(b) material either to the acceptance of the risk
or to the hazard assumed by the insurer; or

(c) the insurer in good faith would either not
have issued the policy or contract or would not
have issued a policy or contract in as large an
amount or at the same premium or rate or would not
have provided coverage with respect to the hazard
resulting in the loss if the true facts had been
made known to the insurer as required either by
the application for the policy or contract or
otherwise.

Mont. Code Ann. § 33-15-403.  State Farm argues § 33-15-403 gives

it the right to rescind and void an insurance binder or policy,

and such rescission a is effective to preclude a third-party's

claim for recovery under the binder or policy.

State Farm also argues that consistent with the rescission

rights under § 33-15-403 decisions of the Montana Supreme Court

confirm that an insurance company has a right to rescind when an

insured makes misrepresentations to the insurer on the

application for insurance.  *See e.g. McLane v. Farmers Ins.*

*Exchange*, 432 P.2d 98 (Mont. 1967).  In *McLane* the insurer issued

a policy on May 22, 1964, and the insured was involved in an

accident on June 7, 1964, which injured a third party.  432 P.2d

at 99.  On June 17, 1964, the insurer learned that the insured

made misrepresentations on the insurance application, but it

subsequently continued to accept insurance premium payments from

the insured, and it paid damage claims arising from the accident.

*Id*.  Then, on July 10, 1964, the insurer sent the insured a

notice rescinding the insurance policy and attempted to void it
*ab initio*.   *Id*.

In deciding whether the insurer could rescind under the
facts of the *McLane* case, the court first recognized that under
the law in existence at that time an insurer had a right to a
reasonable amount of time to investigate an insurance
application, and if the insurer discovered facts entitling it to
rescind the policy it had a right to do so if it acted promptly.
*McLane*, 432 P.2d at 99.  Although such rescission rights existed,
the substantive question was whether the insurer had impliedly
waived its right to rescind the policy.  *McLane*, 432 P.2d at 99.
The court held the insurer, through its conduct in accepting
premium payments and paying damage claims after it learned the
insured made misrepresentations on the insurance application,
waived its right to rescind the policy promptly.  *Id*. at 99-100.

Because the *McLane* case involved injuries to a third party
the court discussed the third-party's rights relative to an
attempted rescission.  The court concluded under the facts of
that case the injured third-party's rights to recover under the
insurance policy vested prior to the attempted rescission.
*McLane*, 432 P.2d at 100.  The court noted such vesting can occur
either at the time of the accident, or at the time of the
insurer's implied waiver of the right to rescind, but in either
case the insurer cannot affect a third-party's rights once they

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 12

vested.  *Id*.  In light of the waiver in that case the court concluded the injured third party's rights had vested by the time of the waiver, and he was entitled to recover under the insurance policy.  *Id*.

Although the court in *McLane* disallowed the attempted rescission, the significance of the case, according to State Farm, is that *McLane* suggests an insurer has a right to rescind an insurance policy even after an accident occurs which caused damages to a third party as long as the insurer rescinds promptly and does not waive its right to rescind.  State Farm further argues, the subsequent decision in *Lentz v. Prudential Ins. Co. of America*, 520 P.2d 769 (Mont. 1974) confirms the suggestion made by the court in *McLane*.  Although the court in *Lentz* ultimately concluded a rescission of the insurance policy did not occur in that case, the court did appear to clarify and confirm that under *McLane* an insurer could rescind an insurance policy even after an accident occurred.  520 P.2d at 772.

Upon closer review of *Lentz* the Court finds several distinguishing points to be significant.  *Lentz* involved an insured's first-party claim under a credit life insurance policy, whereas the instant case involves Plaintiff's third-party claim under an automobile policy.  More importantly though, *Lentz*'s confirmation of an insurer's right to rescind was in the context

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 13

of the first-party claim presented in *Lentz*; the court simply confirmed the rule to note that the death of the insured triggering the insurance company's obligation to pay the life insurance policy did not, by itself, prohibit the insurer from rescinding the policy.  *Lentz*, 520 P.2d at 772.  Again, the context of *Lentz* was a first-party claim and, therefore, *Lentz* confirms nothing as to the rules applicable to a rescission of an automobile liability insurance policy in the face of an injured third-party's claim.  Accordingly, the Court concludes the facts and the holding in *Lentz* do not compel the conclusion that State Farm had a right to rescind and preclude Plaintiff's recovery under the insurance binder as a third-party claimant.

Although *Lentz* is not controlling on the facts of this case, the suggestion remains in *McLane* that an insurer could rescind a policy even after an accident occurs giving rise to third-party claims.  For the reasons discussed below, the Court concludes the suggestion in McLane is no longer valid in light of the subsequent and comprehensive changes to the statutory law of Montana governing automobile liability insurance coverage.  The *McLane* decision was issued in 1967 prior to the insurance policy cancellation requirements in Mont. Code Ann. § 33-23-212(1) which were enacted in 1971.  Additionally, *McLane* was decided prior to the Montana Mandatory Liability Protection Act, discussed infra, which was enacted in 1979.  As discussed below, those statutory

changes are significant when it comes to the ability to rescind an automobile insurance policy in the face of third-party claims.

Before turning to the abrogation of State Farm's rescission rights, the Court must first address one other case on which State Farm relies, which is *American Indemnity Co. v. Elespuru*, 302 F. Supp. 878 (D. Mont. 1969). That case upheld a rescission of an automobile insurance policy. In that case the insurer issued an insurance binder on March 15, 1967. On March 31, 1967, the insurer made the decision to refuse to accept the insurance risk in light of misrepresentations the insured made on the insurance application, and it never issued the formal insurance policy. *Elespuru*, at 878-79. However, on March 31, 1967, the car covered by the binder was involved in an accident. The court concluded the statutory predecessor to Mont. Code Ann. § 33-15-403 on which State Farm relies permitted the insurer to rescind and avoid the insurance binder based on the insured's misrepresentations in the application, thereby precluding any recovery under the binder. *Id.* at 880-81.

The Court concludes *Elespuru* is not binding for several reasons. The decision in *Elespuru* never clarifies whether the claims arising out of the subject accident were first or third-party claims. As discussed below, that distinction is dispositive. Furthermore, the decision in *Elespuru* was also issued before the 1971 enactment of the insurance policy

cancellation provisions and the 1979 enactment of the Montana Mandatory Liability Protection Act, discussed infra.

Based on the foregoing, the Court concludes the law in Montana does not clearly or directly address the current law regarding an insurer's rescission rights when third-party claims are involved.  Other jurisdictions have concluded that due to compulsory liability insurance or financial responsibility laws, and the public policy behind such laws, an insurance company is precluded from rescinding an insurance policy where an innocent third-party is involved.  "[M]any courts" across the country have concluded that mandatory or compulsory automobile insurance statutes

> abrogate the right of an insurer to rescind automobile
> liability insurance so as to deny recovery to an innocent
> third-party claimant.  Rescission of the insurance contract
> in this limited instance is precluded - even though a fraud
> may have been perpetrated [by the insured] in securing the
> coverage.

*National Ins. Association v. Peach*, 926 S.W.2d 859, 861, 863 (Ky. App. 1996) (citing decisions in 13 other state jurisdictions). *See also Progressive Northern Ins. Co. v. Corder*, 15 S.W.3d 381, 383-384 (Ky. 2000) (same holding).

The factual and legal circumstances of the decision in *Peach* are substantially identical to those involved in this case.  The insurer there issued a policy covering a vehicle which was then involved in an accident striking and killing a pedestrian.  The

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 16

insurer then discovered the insured made a material misrepresentation on the insurance application and it sought to rescind the policy.  The court recognized the insurer's common law right to rescind a policy, but it concluded the intent and public policy behind Kentucky's mandatory automobile liability legislation abrogated the insurer's right to rescind when an innocent third party is injured by the operation of the insured vehicle.  *Peach*, 926 S.W.2d at 861.  Under such circumstances, the insurer's only remedy is a prospective cancellation of the policy.  *Id*. at 862.

The statutory structure involved in *Peach* is substantially identical to the laws applicable to this case.  As in Kentucky, the purpose and intent of the Montana Motor Vehicle Safety-Responsibility Act (MVSRA) at Mont. Code Ann. § 61-6-101 et seq. and the Mandatory Liability Protection Act (MLPA) at Mont. Code Ann. § 61-6-301 et seq. is to protect members of the public who are innocent victims of automobile accidents from uncompensated losses arising from the use of a motor vehicle.  *Grimsrud v. Hagel*, 119 P.3d 47, 51 (Mont. 2005); *Shilhanek v. D-2 Trucking, Inc.*, 70 P.3d 721, 728 (Mont. 2003).  *See Peach*, 926 S.W.2d at 861.  Similar to Kentucky law, the MLPA requires every owner of a vehicle operated in Montana to "continuously provide insurance against loss resulting from liability" for personal injury caused by the use of such vehicle.  Mont. Code Ann. § 61-6-301(1);

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 17

*Peach*, at 862.  The MLPA similarly prohibits a person from operating a motor vehicle without the required liability insurance coverage.  Mont. Code Ann. § 61-6-301(4); *Peach*, at 862.  As in Kentucky, Montana law permits cancellation of an insurance policy for non-payment of a premium, or for suspension or revocation of a drivers' license.  Mont. Code Ann. § 33-23-211; *Peach*, at 862.  Finally, Montana has similar strict cancellation notice requirements which do not permit the retrospective cancellation of a policy.  Mont. Code Ann. § 33-23-212; *Peach*, at 862.

Based on the foregoing comprehensive automobile insurance provisions and the public policy behind mandatory automobile liability insurance, the court in *Peach* concluded it is difficult "to reconcile the existence of an absolute right to rescind an insurance policy so as to avoid liability to an innocent third party."  *Peach*, 926 S.W.2d at 862.

> Once liability coverage is issued and a driver is permitted to operate the vehicle, the public is entitled to rely upon it until it is prospectively cancelled in the legislatively prescribed fashion.  To hold otherwise would "tend to emasculate the act and defeat its express purpose."

*Id.* (citation omitted).

As suggested in the text quoted immediately above, the Court notes insurers have control over the decision to issue a binder before it investigates an insurance application.  The insurer is not obligated to issue a binder immediately, and it could chose

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 18

to tell a prospective insured it will first review the application before it decides to issue a policy or a binder. It is logically inconsistent for an insurer to issue a binder, which in effect tells the insured and the public she is covered against liability exposure for the protection of innocent members of the public, but then turn around and decide to rescind the policy leaving an innocent third party exposed to uncompensated losses caused by the insured. If the insurer is concerned about being obligated to provide insurance coverage to a third party based on the binder, and if it does not want to be bound by it, then its option is simple: it can decline to issue the binder until after it has had time to investigate the insurance application.

The Court in *Peach* also addressed Kentucky's version of its rescission statute which is substantially identical to Mont. Code Ann. § 33-15-403 on which State Farm relies. It concluded the right to rescission provided in the statute is not controlling when analyzed together with another provision of Kentucky's insurance laws. Kentucky law prohibits the retroactive annulment of an insurance policy by the insurer and the insured after the occurrence of any personal injury for which the insured may be liable. *Peach*, at 862. *See* Mont. Code Ann. § 61-6-104(6)(a) (establishing an insurer's liability as absolute once an injury covered by the policy occurs and prohibiting a subsequent annulment of the policy). The court in *Peach* recognized that

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 19

although the rescission statute may allow a rescission in the
face of an insurance claim by a first party insured, the
statutory right to rescission was not absolute in light of the
statute prohibiting a retroactive annulment after an innocent
third party has been injured.  The court concluded the statutory
scheme "requires that the insurer rather than an innocent third
party bear the risk of intentional material misrepresentations
made by an insured." *Peach*, at 863.  *See also Progressive
Northern Ins. Co. v. Corder*, 15 S.W.3d 381, 384 (Ky. 2000)
(concluding that as between an innocent third party and an
insurer, the risk of misrepresentations by an insured should be
born by the insurer).

    The factual and legal landscape surrounding the decision in
*Peach* is identical that involved in this case.  While an insurer
in Montana may still have a right to rescind an insurance binder
or policy even after an insured suffers a covered loss and files
a claim, such rescission cannot occur when third-party claims are
involved.  In accordance with *Peach*, and all the other case law
decisions on which *Peach* is based, the Court concludes State
Farm's rights to rescind the insurance binder in this case under
Mont. Code Ann. §§ 28-2-1711 or 33-15-403, *McLane*, *Lentz*, and
*Elespuru* are abrogated by the MLPA and the various provisions of
the MVSRA cited above when an innocent third party has been
injured by a vehicle insured under the binder.  Again, those

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE – PAGE 20

three cases were decided before the MLPA was enacted in 1979 and, thus, the compulsory liability protection requirements which support the abrogation of the right to rescind did not exist at the time those cases were decided.  Therefore, the Court concludes the subject binder provides coverage for Plaintiff's damages asserted in this case.

## B.  Insurance Policy Limits

Plaintiff "acquiesces" that the policy limits available to her under the circumstances of this case are the mandatory minimum limits set forth at Mont. Code Ann. § 61-6-103(2)(b).[11] Since the public policy behind the MLPA and the MVSRA preclude a rescission as against a third-party claim, the same public policy must also govern the amount of insurance proceeds recoverable. *Progressive Northern Ins. Co. v. Corder*, 15 S.W.3d 381, 384 (Ky. 2000).  Such public policy provides for the recovery of statutory minimum amounts, and "[n]o public policy would be advanced by enforcing contractual terms that exceed the required coverage." *Id*.  If a person desires additional coverage beyond the statutory minimums then the person can purchase uninsured/underinsured coverage through his or her own insurance company.  *Mannion v. Bell*, 881 A.2d 810, 813 (N.J. Super. L. Div. 2005) (citing *Marotta v. New Jersey Auto. Full Ins. Underwriting Association*,

---

[11]Pl.'s Br. In Support (June 29, 2006) at 5.

656 A.2d 20 (N.J. Super. App. Div. 1995)).  Accordingly, State Farm's coverage should be subject to the minimum limits set forth at Mont. Code Ann. § 61-6-103(2)(b).

### C.  Plaintiff's Attorneys Fees Incurred in this Action

Plaintiff requests an award of her attorneys' fees incurred in pursuing this declaratory judgment action.  Plaintiff argues she is entitled to such fees pursuant to Montana's Uniform Declaratory Judgment Act at Mont. Code Ann. § 27-8-313 and *Trustees of Indian University v. Buxbaum*, 69 P.3d 663 (Mont. 2003).

State Farm did not respond to Plaintiff's request for attorney fees.  Its failure to respond is deemed an admission the matter is well taken.  L.R. 7.1(I).

Under the Montana Uniform Declaratory Judgment Act the relevant statute provides that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper."  Mont. Code Ann. § 27-8-313.  In *Buxbaum* the court concluded such relief included an award of attorneys' fees as necessary and proper when a plaintiff has to resort to litigation to establish insurance coverage.  69 P.3d at 673-674, ¶ 44-46.  Such fees can also be awarded to a third-party claimant.  *Id*. at ¶ 42.

Plaintiff's request for attorneys fees should be granted pursuant to Mont. Code Ann. § 27-8-313 and *Buxbaum*.  *See Security*

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 22

*National Ins. v. Wink*, 33 M.F.R. 389, 400-402 (D. Mont. 2005). The parties have not addressed the issue of the amount of the fees to be awarded, or whether it would be based on an hourly rate or a contingency fee agreement. *See id*. Accordingly, those issues will have to be resolved in further proceedings in this matter.

### D.  Count II - Implied Covenant of Good Faith and Fair Dealing

State Farm moves for summary judgment dismissing Plaintiff's Count II alleging State Farm is liable for its breach of the implied covenant of good faith and fair dealing. State Farm simply argues there is no contract between Plaintiff and State Farm, and thus no "special relationship" exists as is required for a claim alleging a breach of the implied covenant. Plaintiff concedes Count II is subject to dismissal for the reasons argued in State Farm's brief.

The courts recognize a theory of recovery for breach of the implied covenant of good faith and fair dealing as both a contract claim and a tort claim. *Story v. City of Bozeman*, 791 P.2d 767, 775-76 (Mont. 1990). Both theories, however, require the existence of a contract between the parties. *Id*. at 775, 776. *Debcon, Inc. v. City of Glasgow*, 28 P.3d 478, ¶¶ 56-59 (Mont. 2001). Undisputedly there is no contract between

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - PAGE 23

Plaintiff and State Farm, and absent a contract the implied covenant claim cannot lie.  *Debcon*, at ¶ 59.

## IV.  CONCLUSION

Based on the foregoing, the Court concludes State Farm's attempted rescission of the insurance binder was not effective to avoid coverage for the Plaintiff's third-party claims.  The Court should conclude insurance coverage exists in favor of the Plaintiff, and it should award Plaintiff her attorney fees.  However, Count II should be dismissed as unsupported by the facts of this case.